1  Ronald Cupp
2  150 Raley Town Center Ste 2512
   Rohnert Park, California [94928]
3  Emergency Cell: (707) 318-9929
   ronc2009@gmail.com
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**
10
11 Ronald Cupp,                          )CASE NO:
                                         )
12        Plaintiff,                     )**FIRST AMENDED COMPLAINT (FAC)**
                                         )FOR DAMAGES
13        vs.                            )
                                         )VIOLATION OF 15 USC 1692 *et seq.* FDCPA;
14 FLINT C. ZIDE et *al*                 )VIOLATION OF 15 USC 1681 *et seq.* FCRA;
15 LVNV FUNDING, LLC.                    )VIOLATION OF CALIFORNIA
   RESURGENT CAPITAL SERVICES, LP        )ROSENTHAL FAIR DEBT COLLECTION
16 DOES 1-10                             )PRACTICES ACT CC 1788 *et seq.*
                                         )INTENTIONAL INFLICTION OF
17        Defendants.                    )EMOTIONAL DISTRESS.
                                         )
18                                       )DEMAND FOR TRIAL BY JURY
                                         )
19                                       )
                                         )
20                                       )
                                         )
21                                       )
                                         )
22                                       )
                                         )
23                                       )
24 _____      )
25
26                    **FIRST AMENDED COMPLAINT**
27
       Plaintiff, Ronald Cupp, individually hereby sues above named Defendants for violations
28
   of the FDCPA 15 USC §1692, violations of 15 USC §1681, and the California Rosenthal Fair

Debt Collection Practices Act Civil Code 1788. Plaintiff contends that the Defendants have violated Plaintiffs consumer protections and such laws by repeatedly harassing Plaintiff in attempts to collect alleged but nonexistent debt.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 15 U.S.C. §1681p, 15 U.S.C. §1666, California Stat. § 1788, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367, Jurisdiction arises under Cal. Civ. Pro. §410.10. Defendant conducts business in the state of California and therefore, personal jurisdiction is established.

2.      Venue is proper pursuant to 28 U.S.C. §1391b and Cal. Civ. Pro. §395(a). Venue in this District is proper in that the Plaintiff resides here, the Defendants transact business here, and the conduct complained of occurred here.

## PARTIES

3.      Plaintiff, Ronald Cupp, ("CUPP") is a natural person and is a resident of Sonoma County, California.

4.      Upon information and belief Defendant LVNV FUNDING, LLC, (HEREINAFTER **LVNV**) is a    corporation, located 1703 Laurel St, Columbia, SC 29223, LVNV is a Delaware limited liability company that was organized pursuant to Delaware law on April 13, 2005.  LVNV has a registered agent for service of process, and may be served at CORPORATION SERVICE COMPANY, 251 Little Falls Drive, Wilmington, DE 19808, and is being sued in its corporate capacity.

5.      Resurgent Capital Services, LP,  (HEREINAFTER "RESURGENT") PO BOX 10497, Greenville, SC 29603, RESURGENT is a Delaware Limited Partnership that was organized pursuant to Delaware law on June 24, 1999. RESURGENT appears in a business entity search within the California Secretary of State and has a registered agent in California.

RESURGENT may be served at Corporations Services Company – CSC, Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833, being sued in its corporate capacity.

6.      Defendants RESURGENT and LVNV are debt collectors, subject to the Fair Debt Collection Practices Act, 15 U.S.C. §1692a(6) ("FDCPA").

7.      Defendants are entities which collects debts, bringing it within the ambit of the California Rosenthal Fair Debt Collection Practices Act Civil Code 1788 ("CFDCPA").

## FACTUAL ALLEGATIONS

8.      Plaintiff is a consumer per 15 U.S.C. §1692a(3) & 15 U.S.C. §1681a(c).

9.      Defendants RESURGENT and LVNV are debt collectors per 15 U.S.C. §1692a(6).

10.      **Defendants RESURGENT and LVNV have a brother/sister legal relationship**. Upon information and belief, Plaintiff has taken the information from paragraphs 10 to 32 off a case filed in United States District Court in Central District of California, Pritish Vora Plaintiff, v LVNV FUNDING, LLC. and RESURGENT CAPITAL SERVICES LP. Case #: SACV18-01674 JLS (JDEx). Filed 9/14/2018.

10.      LVNV is a Delaware limited liability company that was organized pursuant to Delaware law on April 13, 2005. LVNV has a registered agent for service of process and may be served at CORPORATION SERVICE COMPANY 251 Little Falls Drive, Wilmington, DE 19808.

11.      LVNV is listed as a "debt buyer" in consumer reports, and as "factoring company" with Credit Karma, a free credit monitoring site for consumers.

12.  LVNV does NOT list either an office address or mailing address on its own website, and states the following on its website: "LVNV's name may appear a customer's credit report or in a letter from a collection agency."

13.     LVNV lists its principal office address as 6801 S. Cimarron Rd., S 424-J, Las Vegas, NV 89113 with various Secretaries of States, but NOT in Nev LVNV lists an address for its officers with the Nevada Secretary of State as 5 Beattie Place, Suite 100, Greenville, SC 29601. (Emphasis added).

14.     LVNV is an acronym for "Las Vegas, NeVada," hence "LVNV."

15.     LVNV is NOT registered as a foreign limited liability company with the California Secretary of State, yet LVNV is the named Plaintiff in "10,000's of lawsuits filed in CA." (See Demurrer to Complaint, LVNV F limited liability company v. James Fu a California corporation, Case No: 30-2018-00995760-CL-BT-CJC, page 9).

16.     RESURGENT is a Delaware Limited Partnership that was organized pursuant to Delaware law on June 24, 1999.

17.     RESURGENT lists itself on its website as a "debt collector" and term is defined by the Fair Debt Collection Practices Act ("FDCPA") [15 U.S.C. 1692a(6)].

18.     RESURGENT appears in a business entity search with the California Secretary of State, and has a registered agent in California. RESURGENT may be served at Corporation Services Company —CSC, Lawyers Incorporating Service 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

19.     RESURGENT lists its principal office address as 55 Beattie Suite 100, Greenville, SC 29601 on its website, the exact same address that LVNV lists for its officers with the Nevada Secretary of State. (Emphasis added).

20.     LVNV and RESURGENT are also "covered persons" as defined by Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5481(6). See also 12 U.S.C. § 5481(5) and (15)(A)(x). The Consumer Financial Protection Bureau ("CFPB") has jurisdiction of covered persons pursuant to CFPA for violations of FDCPA and FCRA, including, but not limited to Sec 623(a)(8)(E) of the FCRA [1 U.S.C. § 1681s-2(a)(8)(E)]. A consumer has no private right of action pursuant Sec 623(a) of the FCRA [15 U.S.C. § 1681s-2(a)]. See ~. RBS Nat. Ba 288 F. App'x 641,642 (11th Cir. 2008) (holding that the FCRA does not provide a private right of action to redress violation of § 1681s-2(a) of

the FCRA, which requires furnishers to submit accurate information to consumer reporting agencies). (Internal cites omitted). (Emphasis supplied).

21.      LVNV and RESURGENT are also each a person who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies" about "transactions or experiences" with Consumers, described in Sec 623(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(2)(A), and each a "furnisher" as defined in Regulation V, 12 C.F.R. 1022.44(c). RESPONDEAT SUPERIOR AND PRINCIPAL-AGENT RELATIONSHIP

22.      Pursuant to the common-law doctrine of Respondeat Superior, LVNV is responsible for (has vicarious liability for) the acts of its agent, RESURGENT, and visa versa.

23.      By way of example, the Honorable Magistrate Judge Mark J. Dins opined: "While courts presume that companies are separate entities, clear evidence can overcome this presumption when: (1) "an agency relationship can be perceived,' (2) one company asserts greater-than-normal control over the other, and (3) one company is "merely an empty shell." (See Court Order on Motion to compel deposition answers, Cox v Sherman Case No. 1:12-cv-01654-TWP-MJD, Document 88 at page 3). (Emphasis supplied).

24.      The court concluded that LVNV "was essentially a shell company." (Cox, Id.).

25.      LVNV is a manager-managed LLC and has no employees. (S Mitchell v. LVNV FUNDING, LLC Case No. 2:12-cv-523-TLS).

26.      LVNV has a written agreement and power of attorney with RESURGENT. RESURGENT acts as the attorney-in-fact for LVNV. (S Mitchell, ECF No. 39).

27.      RESURGENT, operating as a collection agency, does have employees and directs collection activities on behalf of LVNV. (See Mitchell, ECF No. 168).

28.      LVNV will have its counsel "deny" it is a "debt collector" in complaints filed in Federal Court when LVNV is alleged to be a "debt collector." (See Wilder v.

LVNV FUNDING, LLC and BLITT AND GAINES, P.C. Case No. 1:16-cv-01965, Document 16 at y[ 7).

29.      LVNV has a subscriber agreement with the consumer reporting agencies ("CRAs"), including, but not limited to, Experian Information Solutions Inc. ("EXPERIAN"), Equifax Information Services, LLC ("EQUIFAX"), TransUnion, LLC ("TRANSLTNION").

30.      RESURGENT acts as the servicing agent for LVNV to furnish information to the CRAs, however each is responsible for furnishing information.

31.      By way of example, LVNV is the named entity listed on Plaintiff consumer reports with TRANSUNION, EQUIFAX and EXPERIAN, either itself, or listed as "LVNV FUNDING, LLC (c/o RESURGENT CAPITAL SERVICES, L.P.)". LVNV knows (and should know) that EXPERIAN has its North American Headquarters at 475 Anton Blvd., in Costa Mesa, CA. By furnishing information on a consumer report with a company in CALIFORNIA, LVNV is attempting to do business in California. (Emphasis added).

32. LVNV has been sued in the past for violations of the FCRA, 15 U.S.C. § 1681s-2(b) for failing to correct or delete information in a credit file after receiving actual notice of such inaccuracies. (See Smith v. LVNV Funding LLC, Case No 1:08-cv-00606-JRN, Document 1 at 9[ 52-56). LVNV also has been sued to violations of 15 U.S.C. § 1681b(f~ of the FCRA. (See LEE v. LVNV FUNDING LLC, Case No. 8:13-cv-01131-BR-SH, Document 3 at y[ 28).

**END OF WHAT WAS TAKEN FROM ABOVE STATED CASE**

11. Defendants RESURGENT and LVNV have not disputed this information. When RESURGENT  purchased the debt from Synchrony, it came with the caveat of being "disputed" and without account level documentation (required by FCBA). Then 'sold' or 'assigned' to sister company LVNV for legal collection knowing and accepting it was disputed. Under the FDCPA,

selling a disputed debt to another for collection (Synchrony to Resurgent, then Resurgent to LVNV) is a continuation or an attempt to collect a debt, in this case Brother/Sister relationship with RESPONDEAT SUPERIOR AND PRINCIPAL-AGENT RELATIONSHIP.

12.     Synchrony (who was a defendant and has been removed from this case by settlement) was the first furnisher to the CRA's, then RESURGENT thru LVNV who is still attempting to furnish INACCURATE reporting in their attempt to collect this nonexistent debt. Then they did not report that the debt was disputed, thereby continuing to violate statute and adding insult to injury and continuing to damage Plaintiff while attempting to collect this 'debt'. The first prohibition bars furnishing information that the furnisher "knows or has reasonable cause to believe is inaccurate." [1] Such a notice should provide "reasonable cause to believe that the information is inaccurate" and meets the further requirement that its basis is more "than solely allegations by the consumer." In that case, a furnisher must then cease reporting the information, not simply because of the statutory mandate, 15 U.S.C. § 1681s-2(a)(1)(A).

13.     The second prohibition proscribes the furnishing of information where the consumer has notified the furnisher that the information is inaccurate and where the information is, in fact, inaccurate. 15 U.S.C. §§ 1681s-2(a)(1)(B)(i), 1681s-2(a)(1)(B)(ii).

14.     The two accuracy standards must be read in conjunction with the subsection that immediately follows them establishing a duty to promptly correct and update furnished information determined to be incomplete or inaccurate. 15 U.S.C. § 1681s-2(a)(2)(B).

15.     This duty is applicable to furnishers who regularly and in the ordinary course of business furnish information to CRAs, which RESURGENT and LVNV are.  In general terms,

---

[1] 15 U.S.C. § 1681s-2(a)(1)(A). This standard was added to the FCRA by the FACTA amendments of 2003. Pub. L. No. 108-159, § 312(b) (2003). The prior version of the FCRA prohibited a furnisher from reporting to CRAs information that it "[knew] or consciously avoid[ed] knowing" was inaccurate.

furnishers are required to provide accurate, complete, and updated information. Boynton, FTC Informal Staff Opinion Letter (Feb. 15, 2000). These defendants have not.

16.     Once a furnisher makes the decision to provide information about an account to a CRA, it of course must report accurately. Specifically, the furnisher must not furnish information it "knows or has reasonable cause to believe" is inaccurate.

17.     The California version of the FCRA—the Consumer Credit Reporting Agencies Act (CCRAA)—has a standard similar to that of the FCRA in that it prohibits a furnisher from providing information if it "knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a) (West). Unlike almost all other state laws governing furnisher accuracy, this California provision is specifically saved from preemption and is privately enforceable. Noori v. Bank of Am., 710 Fed. Appx. 757 (9th Cir. 2018); Gorman v. Wolpoff & Abramson, L.L.P., 584 F.3d 1147 (9th Cir. 2009). Thus, California residents have the ability to bring claims against furnishers for furnishing inaccurate information without first lodging a dispute with a CRA. Brooks v. Bank of Am., 2021 WL 1541643 (S.D. Cal. Apr. 20, 2021) (sustaining inaccurate reporting claim; "dismissal of the CCRAA claim requires this Court to definitively conclude that Defendant's actions, as stated, were reasonable . . . [S]uch determinations require the Court to consider evidence regarding what information defendants had or should have had access to at the time of reporting, which, at the earliest, occurs at summary judgment").

18.     Moreover, should a furnisher fail to correct a dispute sent directly to it by the consumer, and then fail to conduct an adequate investigation following a section 1681$i$(a) dispute later lodged with the CRA, *(which is our case at bar)* its knowledge of the dispute and culpability in eventual litigation will be all the more apparent. Saunders v. Branch Banking & Tr. Co. of Va., 526 F.3d 142 (4th Cir. 2008) (placing furnisher's misconduct in

context of consumer's "ongoing dispute" to affirm jury's determination of willfulness and award of punitive damages).

19.    Any furnisher who negligently fails to comply with any of its investigation duties is liable to the consumer for actual damages, the costs of litigation, and attorney fees. 15 U.S.C. § 1681o.  Arriaga v. Wells Fargo Bank, 2011 WL 4738522 (N.D. Ill. Sept. 30, 2011).

20.    The strongest case is one where reasonable minds cannot differ because the disputed information is objectively incorrect or incomplete. Pittman v. Experian Info. Sols., Inc., 901 F.3d 619 (6th Cir. 2018), Weinstein v. Equifax Info. Servs., L.L.C., 2019 WL 2610954 (C.D. Cal. May 6, 2019), Henry v. Ocwen Loan Servicing, L.L.C., 2018 WL 3130422 (S.D. W. Va. June 25, 2018) (denying dismissal because complaint alleged clear inaccuracy that "simple investigation would reveal"); Asufrin v. Roundpoint Mortg. Servicing Corp., 2016 WL 1056669 (N.D. Ill. Mar. 17, 2016) ("Plaintiff asserts that after reporting the dispute to the CRAs, and after the CRAs notified Defendant of the dispute, Defendant's trade lines were still inaccurate. _In our case at bar, original creditor Synchrony_ _who sold to RESURGENT because they could not meet FCBA 15 U.S.C. 1666 and gave up_ _their right to collect as they could not product 'account level documentation'._ These assertions support the reasonable inference that Defendants failed to investigate, reinvestigate or properly report disputed information."); In that event, if the furnisher still rejects the dispute or the CRA continues to report the information, each necessarily will be shown to have breached its duties to conduct a reasonable investigation since it will have disregarded incontrovertible facts.

21.    Numerous cases uphold a Consumers right to seek relief. Furnishers are required to undertake five enumerated duties upon receipt of a notice that the consumer has

disputed the accuracy or completeness of any information provided by that furnisher with a consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1)(A) to § 1681s-2(b)(1)(E). Any furnisher who fails to comply with any of these five section 1681s-2(b) duties is liable to the consumer in a private cause of action for its negligent or willful noncompliance. 15 U.S.C. §§ 1681n, 1681o. Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611 (6th Cir. 2012) ("[The] FCRA expressly creates a private right of action against a furnisher who fails to satisfy one of five duties identified in § 1681s-2(b)"). *Accord* Snyder v. Nationstar Mortg. L.L.C., 2015 WL 7075622, at *6 (N.D. Cal. Nov. 13, 2015) (duties under § 1681s-2(b) are "independent and severable," *citing* Wang v. Asset Acceptance L.L.C., 2010 WL 2985503, at *5 (N.D. Cal. July 27, 2010), ***and FCRA provides private remedy "if such furnisher breaches any of the duties enumerated in section 1681s-2(b)***," *citing* King v. Bank of Am., 2012 WL 4685993 (N.D. Cal. Oct. 1, 2012) .

22.     <u>Standards for reinvestigation that Defendants did not perform</u>. Defendants LVNV's furnisher liability confirmed that the investigation must be a substantive examination of the merits of the consumer's dispute. Johnson v. MBNA Am. Bank, 357 F.3d 426, 431 (4th Cir. 2003). Malm v. Household Bank, 2004 WL 1559370 (D. Minn. July 7, 2004). The court stated that a reasonable investigation "requires some degree of careful inquiry" as opposed to a merely "superficial" inquiry. Johnson v. MBNA Am. Bank, 357 F.3d 426, 430 (4th Cir. 2003).

23.     Therefore, just as the CRA's "reasonable investigation" may not simply "parrot" the furnisher's position, Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997), the furnisher's "reasonable investigation" must contain a "qualitative component" and thus may not merely beg the question by confirming simply that the disputed information

itself is being faithfully conveyed to the CRA. Johnson v. MBNA Am. Bank, 357 F.3d 426, 430 (4th Cir. 2003).

24.    [W]hen a furnisher does not already possess evidence establishing that an item of disputed information is true, § 1681s-2(b) requires the furnisher to seek out and obtain such evidence before reporting the information as 'verified' . . . **(so did Synchrony falsify records to RESURGENT when sold, and what did RESURGENT share or instruct LVNV when it sent the account over for collection?** (remember brother/sister or alter Ego relationship and joint liability).

25.    The requirement to uncover additional facts will be more or less intensive depending on what evidence the furnisher already possesses. For instance, a debt buyer with account-level documentation or more comprehensive warranties from its predecessor debt buyer might be in a completely different position than original creditor."

***26.***    In our case the proper response for furnishers who determine that the evidence necessary to verify disputed information either does not exist or is too burdensome to acquire" would be to "cease investigation and notify the CRAs that the information 'cannot be verified.'"  The Court noted that "[t]his framework reflects the fact that § 1681-2(b) is designed ***not only to exclude false information from credit reports, but also to prevent the reporting of unverifiable information."***

27.    **Defendants LVNV and sister RESURGENT failed to reasonably investigate and modify the allegedly inaccurate information**.

28.    Experian, TransUnion, and Equifax are consumer reporting agencies (CRA) defined by 15 U.S.C. §1681a(f), who have been removed from this suit by settlement.

29.     On 3-1-19 Plaintiff received a letter from SYNCHRONY stating they had sold the account to Resurgent Capital Services, LP.

30.     The Defendants, RESURGENT and LVNV, have a duty and obligation to *accurately furnish data and information* to the reporting agencies EXPERIAN, EQUIFAX, AND TRANSUNION.

31.     RESURGENT and LVNV Funding LLC, have continually reported incorrect and inconsistent data to include, but not limited to: date account opened, amount owed, amount past due, account status, payment status, amount past due, monthly payment, and seven year payment history, and most importantly, that the debt was disputed by Plaintiff.

32.     Not once did defendants EXPERIAN, EQUIFAX AND TRANSUNION show in their reports that the debt was disputed, because Defendants RESURGENT and LVNV did not comply with statute and request the debt be shown as "disputed" as required by law.

33.     Plaintiff has standing pursuant to Article III of the United States Constitution because he has suffered an injury in fact, the injury in fact is traceable to the challenged conduct of Defendants' actions described herein, and Plaintiff's injury in fact is likely to be redressed by a favorable judicial decision in this court.

34.     Plaintiffs' injury is in fact both particular and concrete because he has suffered an invasion of a legally protected interest that is concrete because, particularized and actual or imminent. By way of example, Plaintiff has spent a tremendous amount of time and energy to research Defendants, the FDCPA, the FCRA has incurred time and expenses to fix the errors on his consumer reports. Plaintiff has had to defend himself in State Court spending a tremendous amount of time and energy, costs, and emotional distress. Defendants acted with the willful and malicious intent to injure and cause harm to Plaintiff. Plaintiff has suffered anxiety, headaches,

loss of sleep, humiliation and other negative emotions directly caused by Defendants' actions in their willful and neglect violations of the FCRA.

35.      Upon information and belief, as cited in the Supreme Court Decision, "The irreducible constitutional minimum of standing consists of three elements: injury in fact, causation and redressability. (See Lujan v. Defendants of Wildlife, 504 U.S. 555, 560-1, 112 S. Ct 2130, 119 L.Ed.2d 351 (1992)).

36.      Plaintiff is within the statute of limitations pursuant to the FDCPA 1692k(a) and FCRA 1681p, as Plaintiff fist discovered the conduct by Defendants in 2016, and are Defendants actions and damages are continuing to this day, even as to May 2020 when Defendants filed suit in Sonoma County Superior Court to collect this false debt, Defendants dismissed the suit at trial on  May 11, 2022, and even 3 months after dismissing the complaint at trial, as of the time of filing this action, August 2022, Defendants continue to "incorrectly misreport and misrepresent" and damage Plaintiff and thus Plaintiff's claims are not time-barred.  Defendants' actions were willful and reckless disregard of the FCRA. Defendants had ample opportunity to rectify.

**COUNT I**
**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C.**
**§1692e(2), (5), (8) and (10) DEFENDANTS RESURGENT and LVNV.**

37.      Plaintiff alleges and incorporates the information in all previous paragraphs.

38.      Plaintiff is a consumer per 15 U.S.C. §1692a(3).

39.      Defendants are debt collectors per 15 U.S.C. §1692a(6).

40.      Defendants are furnishers per Sec 623(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(2)(A),

41.      Defendants continued to attempt to collect from Plaintiff an unknown debt, by submitting a demand from an unknown debt collector (seller) to unknown consumer, even after demand for validation per 15 U.S.C. §1692g.

42.     Defendants continued to furnish and report this debt on Plaintiffs credit report to all three CRA's, which is an attempt to collect a debt, and not showing the debt was disputed per 15 U.S.C. §1692g which is further violation of the statute.

43.     Defendants violated 15 U.S.C. §1692e(2) The false representation of – (A) the character, amount, or legal status of any debt.

44.     Defendants violated 15 U.S.C. §1692e(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

45.     Defendants violated 15 U.S.C. §1692e(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

46.     Defendants violated 15 U.S.C. §1692e(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

WHEREFORE, Plaintiff CUPP respectfully requests that judgment be entered against all defendants, jointly and severally; for the following:

A.  Statutory damages pursuant to 15 U.S.C. §1692k; $1,000 for each Defendant;

B.  General/Actual damages to be determined at trial;

C.  Costs and reasonable attorney fees pursuant to 15 U.S.C. §1692k;

D.  For such other and further relief as the court may deem just and proper.

## COUNT II
## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. §1692g(a) BY DEFENDANTS RESURGENT and LVNV.

47.     Plaintiff alleges and incorporates the information in all previous paragraphs.

48.     Plaintiff is a consumer per 15 U.S.C. §1692a(3).

49.     Defendants are furnishers per Sec 623(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(2)(A),

50.     Reporting/furnishing to the CRA's is an initial communication.

51.     Reporting/furnishing to the CRA's is an attempt to collect a debt.

52.     Reporting/furnishing to the CRA's invokes duty and obligation under 15 U.S.C. §1692g(a), to contact the consumer within five days with a written notice giving the consumer a chance to dispute the debt under 15 U.S.C. §1692g(b).

53.     Not once did the reporting/furnishing by defendants RESURGENT and LVNV to CRA's inform the public the debt is disputed.

54.     Neither Defendant performed their known duty and obligation to contact Plaintiff.

WHEREFORE, Plaintiff CUPP respectfully requests that judgment be entered against both defendants, jointly and severally; for the following:

A.  Statutory damages pursuant to 15 U.S.C. §1692k; $1,000 for each Defendant;

B.  General/Actual damages to be determined at trial;

C.  Costs and reasonable attorney fees pursuant to 15 U.S.C. §1692k;

D.  For such other and further relief as the court may deem just and proper.

**COUNT III**
**VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681s-2(b)**
**BY DEFENDANTS' RESURGENT and LVNV.**

55.     Plaintiff alleges and incorporates the information in all previous paragraphs.

56.     Plaintiff is a consumer per 15 U.S.C. §1681a(c).

57.     EXPERIAN, TRANSUNION, EQUIFAX are "Credit Reporting Agencies" or CRA's per 15 U.S.C. §1681a(f).

58.     Defendants RESURGENT and LVNV are furnishers per Sec 623(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(2)(A),

59.     Section 623(b)(1)(A) of the FCRA makes it unlawful for a furnisher of information to a Consumer reporting agency, upon receiving a notice of a Consumer dispute from the Consumer reporting agency, not to conduct a reasonable investigation of the disputed information.  15 U.S.C 1681s-2(b)" (See <u>CFPB v Encore Capital Group, Inc., et al</u>., CFPB File N. 2015-CFPB-022 at 124).

60.     The Consumer Data Industry Association ("CDIA") is a trade association that represents major institutions including CRAs, and provides Metro 2 regulatory compliance training workshops, and guidance for data furnishers such as LVNV and RESURGENT. The CDIA issues occasional memos for CRAs.

61.     Defendants knew (or should have known) that in 2015, the CDIA issued a memo, whereby the CRAs agreed **that collection agencies** were no longer allowed to report any debts that were "**not the result of a contract or agreement to pay.**"  (Emphasis added) LVNV and RESURGENT knows it is a collection agency.

62.     Defendant knew (or should have known) that it was furnishing an item that that was "not the result of a contract or agreement to pay" between Plaintiff and ANY entity regarding the alleged account. Defendants knew (or should have known)  that at all times relevant, they lacked standing to furnish the item.

63.     Defendants knew (or should have known), pursuant to the FCRA, Sec 623(b)(1)(E), [15 U.S.C 1681s-2(b)(1)(E)], with subsequent "NOTICE OF DISPUTE" sent to the CRAs, "if an item of information disputed by a consumer is found to be **<u>inaccurate or incomplete or cannot be verified</u>** after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency, only as appropriate, based on the result of the investigation promptly—

i.      Modify the item of information;

ii.      Delete that item of information; or

iii.     Permanently block the reporting of that item of information

64.     Defendants knew (or should have known) to "review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [1681i]."

65.     Defendants RESURGENT and LVNV are a "furnisher" within the meaning of the 15 U.S.C.§1681s-2. 15 USC§1681s-2(a) prohibits furnishers from reporting inaccurate or erroneous information about consumers. As such, it placed an affirmative duty on furnishers to correct and update information which they know, or reasonably should know, is inaccurate. The subsection requires furnishers to flag or otherwise provide notice to credit reporting agencies of any "dispute" by a consumer related to his or her credit information or history, FCRA, 15 USC§1681s-2(a)(1)-(3). Plaintiffs' consumer credit report is a consumer report within the meaning of 15 U.S.C. §1681a(d).

66.     The FCRA, 15 U.S.C. 1681s-2(b) has Obligations regarding defendants LVNV and RESURGENT as furnishers to investigate consumers disputes. Subsection 1681s-2(b) specifies a second set of obligations on a furnisher. These obligations are triggered once a credit reporting agency CRA notifies the furnisher that it has received a "notice of dispute" from the consumer pursuant to 15 U.S.C. § 1681s-2(a)(2). After the disputes are received by a CRA from a consumer, it, in turn, is required under § 1681i of the FCRA to forward a consumer dispute verification (CDV) form to the furnisher, requiring it to verify the credit information and investigate its accuracy.

67.     After receiving notice of such a dispute from a CRA, a furnisher has 5 mandatory duties it must perform within 30 days:

a.   to conduct "an investigation" with respect to the disputed information;

b.   to "review all relevant information" provided by the credit reporting agency;

c.   to "report the results of its investigation" back to the credit reporting agency;

    d.  if the investigation finds the existing information is incomplete or inaccurate, to report back those results to each of the consumer reporting agencies to whom the furnisher originally communicated information about the consumer; and

    e.  to "modify, . . .delete. . .or. . .permanently block" the reporting of any item of information found to be inaccurate, incomplete, or which cannot be verified as accurate after a reinvestigation. 15 U.S.C. § 1681s-2(b)(1).

68.    In §1681s-2(b) duties arise only after a furnisher receives notice of dispute from a CRA. Notice of a dispute to a furnisher by a consumer directly does *not* trigger a furnisher's duty to reinvestigate under §1681s-2(b). The consumer must dispute to a CRA, which, in turn, forwards the dispute to the furnisher. This indirect "filtering" mechanism must be followed by a consumer to give rise to a duty of investigation *under the FCRA* to the furnisher. A furnisher need not honor a dispute received directly from the consumer, whether oral or written, under the FCRA. ***Such a dispute, it should be noted, does create a legal obligation under §1692g of the FDCPA*** **which Plaintiff served upon defendants.**

69.    Plaintiff notified Defendants RESURGENT and LVNV, (Respondeat Superior and Principal – Agent Relationship -brother/sister) directly thru letter to LVNV and thru letters thru CRA's of its dispute and defendants also and failed to correct or delete information found to be inaccurate and erroneous, and or failed to properly investigate Plaintiff's disputes.

70.    This imposed a heightened duty and obligation for the furnisher to reinvestigate. Plaintiff alleges that at all relevant times Defendants RESURGENT and LVNV failed to maintain, and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, concerning the account in question, violating 15 U.S.C. § 1681e(b). Plaintiff alleges that Defendants RESURGENT and LVNV failed to conduct a proper and lawful reinvestigation.

71.    All actions taken by the Defendants thru the CRA's were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the

knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FCRA and state law and/or that knew or should have known that their actions were in reckless disregard of the FCRA and state law. Defendants and each of their acts constitutes multiple willful non-compliance with FCRA.

72.   Defendants RESURGENT and LVNV violated the FCRA 15 U.S.C. §1681s-2(b) by continuing their representation within Plaintiff's credit file with all CRA's without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the SYNCHRONY BANK representation by failing to review all relevant information regarding same; by failing to accurately respond to the CRA's; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the SYNCHRONY BANK representations to the CRA's.

73.   As a result of this conduct, action and inaction of defendants RESURGENT and LVNV, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and inaccurate CRA reporting's to general public.

74.   Defendants conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. §1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. §1681o.

75.   Defendants RESURGENT and LVNV knew (or should have known) that **any person** who fails to comply with **any requirement** imposed pursuant to the FCRA with respect to **any consumer** is liable to that consumer. (Emphasis added). Defendants, and each of them, at all times relevant herein, were the principles, agents employers, employees, and ratified, or

approved of the acts or omissions alleged herein with respect to the willful and/or negligent violations of the FCRA, and were acting in the course and scope of the authority's such principals, agents, employers, and employees.

76.    Plaintiff's letter of January 23, 2017 demanding reinvestigation conferred a known duty and obligation on defendants. Defendant RESURGENT and LVNV continued to report inaccurate information to the CRA's, certifying to each CRA the information was accurate. Defendants RESURGENT and LVNV continued to NOT properly reinvestigate and report erroneous and inaccurate data to the public regarding Plaintiff.

WHEREFORE, Plaintiff CUPP respectfully requests that judgment be entered against defendants; for the following:

A.  Statutory damages by RESURGENT and LVNV pursuant to 15 U.S.C. §1681n; $1,000 for each month of inaccurate reporting (24 months) to each CRA (EXPERIAN, TRANSUNION, EQUIFAX,3 total) for a total of : $72,000.

B.  Punitive damages to be determined at trial;

C.  Costs and reasonable attorney fees pursuant to 15 U.S.C. §1681n;

D.  For such other and further relief as the court may deem just and proper.

**COUNT IV**
**VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CAFDCPA), CC §1788 BY RESURGENT and LVNV.**

77.    Plaintiff alleges and incorporates the information in all previous paragraphs.

78.    Plaintiff is a consumer within the meaning of 15 U.S.C. 1692a(3).

79.    Defendants is seeking to collect a consumer debt from Plaintiff as defined by Cal. Civ. §1788(f).

80.     The account in question is a consumer credit transaction as defined by Cal. Civ. §1788.2(e) as Plaintiff has allegedly received property, services or money from the Defendant on an extension of credit and such property, services or money was used primarily for personal, family or household purposes.

81.     Defendants violated §1692d of the FDCPA by engaging in conduct the natural consequence of which is to harass, oppress, or abuse the Plaintiff.

82.     Defendants violated the §1788.17 of the CFDCPA by continuously failing to comply with the statutory regulations contained with the FDCPA 15 USC §1692 *et seq*. as outlined above.

WHEREFORE, Plaintiff CUPP respectfully requests that judgment be entered against all defendants, jointly and severally; for the following:

A.  Statutory damages pursuant to §1788.30(b); $1,000 for each Defendant;

B.  Costs and reasonable attorney fees pursuant to §1788.30(c);

C.  For such other and further relief as the court may deem just and proper.

**COUNT V**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**BY RESURGENT and LVNV.**

83.     Plaintiff alleges and incorporates the information in all previous paragraphs.

84.     It appears the ultimate facts constituting the outrageous conduct underlying the cause of action outlined below:

a.  Defendants not stopping further collection efforts when Plaintiff wrote.
b.  Defendants not stopping further harassment when Plaintiff wrote.
c.  Defendants not validating or verifying the debt as required.
d.  Defendants sending out to collection attorneys in a further attempt to collect this unverified/unvalidated debt.
e.  Defendants reporting inaccurate information on Plaintiffs credit reports.
f.  Defendants not reporting on Credit Reports the debt is disputed.

g.  Defendants continuing to attempt to collect a debt that they knew or should have known was unverified, unvalidated, disputed, and even the purported original creditor stated they had no contract or account level documentation of.

h.  Defendants continuing to attempt to collect a debt by passing on this debt to others or another to 'see if they could have any success fishing to see who would pay'.

i.  Defendants continuing to attempt to collect a debt by taking Plaintiff to State Court on this matter, with about two years of stress and strain and embarrassment on Plaintiff, going all they way to Court, and then dismissing the case on the day of trial.

j.  Defendants in State Court were outside of subject matter jurisdiction as the complaint time frame was outside of 4 years.

85.    Defendant's actions were outrageous, intentional, and malicious, and done with reckless disregard of the fact that the actions would certainly cause Plaintiffs to suffer severe emotional and physical distress.

86.    As a proximate result of the acts of Defendant's, Plaintiff's suffered manifestations of severe emotional distress, specifically in the form of humiliation, mental anguish, anxiety, emotional distress, psychosis, loss of sleep, loss of appetite, and fear. The acts of Defendants have injured Plaintiff's in mind and body. Some of the manifestations of Defendants conduct on Plaintiff, upon receiving continuing calls to his private cell phone, and continuing receiving collection notices, noticed changes to his well-being. This was discovered by Plaintiff and by others who reported to Plaintiff the following observations. Nervousness, becoming sick right after the calls or receiving letters, stress, unable to focus or keep a train of thought for a period of time, loss of sleep, loss of appetite, lack of patience with others and anger right after receiving Defendant's collection calls.

87.    Defendant's conduct was done knowingly, willfully, and with malicious intent, and Plaintiff is entitled to punitive damages in an amount to be determined by proof at trial.

WHEREFORE, Plaintiff CUPP respectfully requests that judgment be entered against l defendants, jointly and severally, for the following:

A.  Intentional infliction of emotional distress in the amount to be determined at trial.

B.  Costs and reasonable attorney fees.

C.  For such other and further relief as the court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: May 16, 2023                    Respectfully submitted


*/s/ Ronald Cupp*
RONALD CUPP
Plaintiff Pro Se

1
2
3
4

## CERTIFICATE OF SERVICE

5
6
7
8

I certify that on May 16, 2023, a copy of the foregoing was filed and served electronically

9

in the ECF system. Notice of this filing will be sent to the parties of record by operation of the

10

Court's electronic filing system. Parties may access this filing through the Court's system.

11
12

Dated: May 16, 2023

13
14
15

By: */s/ Ronald Cupp*
Ronald Cupp, Plaintiff Pro Se

16
17
18
19
20
21
22
23
24
25
26
27
28